### Schirmer, et al. v. Myers, et al.

(Decided February 16, 1915.)

### Appeal from Carroll Circuit Court.

1. Contracts—Sale and Delivery of Tobacco.—In a contract for sale and delivery of tobacco, after it was stripped, where the place of delivery was changed by subsequent agreement from Madison, Ind., to Carrollton, Ky., the fact that the purchaser later told them not to deliver it at Carrollton, did not justify the seller in secretly delivering to Carrollton and selling to other parties.
2. Contracts—Delivery of Tobacco.—It was their duty to deliver at Carrollton, and offer it to the purchaser in a reasonable time after stripping.
3. Contracts—Sale and Delivery of Tobacco.—The purchaser did not abandon the contract or release the seller by asking for another change in the place of delivery, and if the seller failed to deliver according to contract, he is liable in damages to the purchaser.

WINSLOW & HOWE for appellants.

SMITH & GREENE and T. B. McGREGOR for appellees.

Opinion of the Court by Judge Nunn—Reversing.

This is a suit by Schirmer & Company to recover damages of Myers and Brinley for breach of contract in the sale of tobacco. In the lower court judgment went for Brinley and Myers, and Schirmer appeals. Brinley was a tenant of Myers, and, in the year 1912, raised a tobacco crop of about 4,000 pounds on Myers' farm. As tenant, Brinley owned one-half of the tobacco, and Myers the other half. On November 8th, 1912, they signed a contract selling to Schirmer the whole crop at $14.50 per hundred pounds, and agreed to deliver it at the warehouse of Schirmer & Company, in Madison, Indiana. The contract is silent as to time of delivery and payment. Brinley says it was understood that they were to make delivery of the tobacco when it was stripped.

During February, 1912, and without notice to Schirmer, Brinley and Myers delivered one lot of the tobacco at a warehouse in Carrollton, Kentucky, and which was sold on their account, but not in their own name, and the balance of it was sold at or about the same time from their barn. In neither case did appellees tender the tobacco to Schirmer, nor did he have any knowledge of the delivery or sale. One lot brought $21 per hundred, and one lot $16 per hundred. There is no controversy about the fact that at the time the tobacco was sold in February it was worth on the market $235.30 more than would have been realized by Myers and Brinley under the price at which they contracted to sell to Schirmer. Brinley and Myers admit the contract of sale, but justify their breach of it by claiming Schirmer first broke it. Brinley testifies that about a month or six weeks after the contract Schirmer told them not to deliver at Madison, and about two weeks later he told him not to deliver at Carrollton. Schirmer says that Brinley did ask for the privilege of delivering at Carrollton instead of Madison, and he consented to the change by way of accommodation to them.

Brinley explains that two weeks after the last conversation there was a flood stage in the Ohio, and backwater was within six inches of the floor of his barn— that under the circumstances it was hazardous to carry the tobacco across the river to Madison, and he had to move it to Carrollton.

The court instructed the jury to find for Schirmer & Company under a proper measure of damages, unless

they believed from the evidence that, after Schirmer bought the tobacco, he agreed with Brinley and Myers that the delivery should be made at Carrollton, Kentucky, instead of Madison, Indiana, and that Brinley and Myers were in good faith making arrangements to deliver to. Schirmer the tobacco at Carrollton when Schirmer notified them that he would not receive it at Carrollton, and directed them to deliver it at Madison, Indiana, instead.

We are of the opinion that this instruction was erroneous, and that the court should have peremptorily instructed the jury to find for Schirmer & Company under a proper measure of damages. There is absolutely no evidence that Schirmer abandoned the contract or did anything that would operate as a release to appellees. The most that he ever did was to consent to a change in the place of delivery, and it is evident that this was done at the instance of appellees and for their accommodation. He never told them that he would not receive the tobacco. The delivery under the contract required a twelve mile haul to Madison. Schirmer consented that they might deliver to Carrollton instead, and that involved a haul of one and one-fourth miles only. It is true appellees say that subsequently Schirmer directed them not to deliver it at Carrollton. This was not an abandonment of the contract. Accepting as true the statements of appellee, Schirmer had a right to ask them to again change the place of delivery, and, if they would not agree to that, then it was their duty, within a reasonable time, and as soon as the tobacco was stripped, to deliver it at Carrollton, and notify Schirmer. They took the tobacco to Carrollton, but it was done secretly and without notice to Schirmer. Had they notified him, or offered it to him there and he refused to take it, they would be at liberty to sell it to other parties, and if it brought less than the contract price, Schirmer would have been liable to them in damages for the difference.

Appellees argue that shortly after the contract was entered into there was a substantial decline in the market price of tobacco, and for that reason Schirmer & Company did not want to take it, but the record does not contain any evidence of a decline in the market. On the contrary, there was a substantial increase in the market, and that fact, in connection with the shorter haul to Carrollton, explains, as argued by appellants, why Brinley

and Myers hauled some of the tobacco to Carrollton without the knowledge of Schirmer and had it sold under another name, and why the remainder was privately sold about the same time from their barn. There is no evidence that appellees were making any arrangement to deliver the tobacco to Schirmer at Carrollton, or elsewhere. As above indicated, appellees were not justified in selling the tobacco to other parties, unless Schirmer refused to receive it or notified them that he would not take it if delivered.

The judgment is, therefore, reversed for further proceedings consistent with this opinion.